UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Shannon Marie Schurman,<br><br>          Plaintiff,<br><br>vs.<br><br>Frank Bisignano, Commissioner of Social Security,<br><br>          Defendant. | Case No. 2:25-cv-00078-MDC<br><br>**ORDER DENYING PLAINTIFF'S REQUESTED RELIEF (ECF NO. 11) AND AFFIRMING THE ADMINSTRATIVE LAW JUDGE** |

This matter involves plaintiff Shannon Marie Schurman's request to reverse and either order payment of benefits or a remand the Administrative Law Judge's ("ALJ") final decision denying her Social Security benefits.[1] Plaintiff filed her brief (ECF No. 11) and defendant Commissioner filed an opposition brief (ECF No. 15). The Court **DENIES** plaintiff's requested relief and **AFFIRMS** the ALJ's final decision for the reasons below.

I.      BACKGROUND

On May 18, 2021, plaintiff completed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act and an application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Administrative Record ("AR") 306-13. The applications were denied initially and on reconsideration. AR 120, 133-35.

Plaintiff then requested a hearing before an ALJ. ALJ Arthur Zeldman held a hearing on July 20, 2023, and a supplemental hearing on November 1, 2023. AR 44-107. Plaintiff was represented by counsel, appeared and testified on her own behalf at both hearing. *See id*. A vocational expert appeared

---

[1] Pursuant to the request in the Commissioner's Brief (ECF No. 15 at 1 n.1), the Court also substitutes defendant Carolyn Colvin for current Commissioner of Social Security Frank Bisignano ("Commissioner").

1

and testified at the first hearing and a medical expert appeared and testified at the supplemental hearing. *See id*. On February 7, 2024, The ALJ issued a decision stating that plaintiff was not "disabled" under the Social Security Act and denying her claims. AR 20-37.

Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. AR 1-6, 287-88. Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g).

## II.     DISCUSSION

### A.     Legal Standard

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social Security plaintiffs have a constitutionally protected property interest in Social Security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When the Commissioner of Social Security renders a final decision denying a plaintiff's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g).

#### i.     Five-Step Process To Determine Disability

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education, and work experience. *See* 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Commissioner has a five-step process to determine if a person is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2025); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the

first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2025). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c) (2025). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). If the claimant has an impairment that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d) (2025). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2025). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f), 416.920(a)(4)(iv), (e), (f) (2025). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. §§ 404.1565(a), 416.920(a) (2025). In making this determination, the Commissioner assesses the claimant's residual functional capacity ("RFC") and the

physical and mental demands of the work previously performed. *See* §§ 404.1565(a), 416.920(a); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2025); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945 (2025). In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2025).

     A claimant can return to previous work if he or she can perform the work as he or she actually performed it, i.e., if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, i.e., "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2025); *see also Berry*, 622 F.3d at 1231.

     If the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e) (2025). This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a Vocational Expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not found disabled. 20 C.F.R. §§ 404.1566(b), 416.966(b) (2025). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g) (2025).

### ii. Substantial Evidence Standard

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting 42 U.S.C. § 405(g)). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (defining what a mere scintilla of evidence is).

The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (citation omitted); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (substantial evidence "is a highly deferential standard of review"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### b. Relevant ALJ Findings

At step one, the ALJ found plaintiff met the insured status requirements through June 30, 2026, and that while she had engaged in substantial gainful activity since her alleged onset there, she did not engage in such substantial gainful activity for a continuous 12-month period. AR 26. At step two, the ALJ concluded plaintiff had the following severe impairments: rheumatoid arthritis, degenerative disc disease of the lumbar and spine, osteoarthritis, and diabetes mellitus. AR 26-30. At step three, the ALJ

determined plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. AR 30.

At step four, the ALJ assessed plaintiff as having the RFC to perform light work, except she could lift and carry 20 pounds occasionally and 10 pounds frequently; can stand, walk, and/or sit for 6 out of 8 hours and push/pull as much as she can lift and carry. AR 30. The ALJ then concluded Plaintiff was able to perform her past relevant work as a deliverer, merchandiser and usher. AR 36. As a result, the ALJ found Plaintiff not disabled from May 10, 2020, through the date of his decision. AR 36-37.

The ALJ also stated that the opinion testimony of Dr. Jill Silverman was only partially supported by the record when making his decision. AR 35. Relevantly, he stated that Dr. Silverman's opinion that "could sit for 4 hours at a time for a total of 8 hours, and stand/walk for 1 hour of a time for a total of 2 hours" was not supported by the medical record. AR 35. This was because plaintiff (1) had treatment with lumbar injections that gave 70% to 100% benefit and (2) medical exams only revealed equivocal straight-leg raise and a January 14, 2017 MRI scan only had "mild" findings for her lumbar spine. *See* AR 35. Also, the ALJ stated that Dr. Silverman's opinion noting that plaintiff would find it "difficult" to get to work "a few days [a month]" was not supported by the medical record. AR 35-36. This was because he found that plaintiff had a "generally routine and conservative treatment regimen" and her health condition in the record was not so severe as to cause her problems to do past relevant work. *See* AR 35-36.

### c. Plaintiff's Arguments Against the ALJ's Final Decision Are Unpersuasive

Plaintiff bases her appeal on the ALJ considering the opinion of the medical expert Dr. Silverman only partially supported by the medical record. *ECF No. 11*. Specifically, plaintiff objects to the ALJ's finding that Dr. Silverman's opinion with "[plaintiff's] standing and walking limitations and absenteeism" was not supported by the medical record. *ECF No. 11* at 11. She makes several arguments on why the ALJ's finding here is not supported by substantial evidence and why the medical record

supports the severity of plaintiff's allegations of disability. *See generally ECF No. 11*. The Court does not find any of her arguments persuasive.

          i.      **The ALJ's Finding Regarding Dr. Silverman's Opinion On Plaintiff's Walking and Standing Limitations Is Supported By Substantial Evidence**

Plaintiff first argues that that the ALJ did not consider that the benefits she received from the lumbar injections varied greatly over the period she took them, and was not consistently as 70% to 100%[.]". *ECF No. 11* at 6-7 (pointing out also a time in November 2020 that plaintiff reported no benefit from taking injections). However, the record shows that plaintiff consistently used the injections and found them useful enough to keep doing the treatment from at least 2018 to 2021. AR 1102, 1233. Barring the November 2020 injection, plaintiff also consistently reported at least some benefit from the injections from 2018 to 2021. AR 1102 (varying from 40% to 100% benefit and a benefit lasting from a few days to nine months). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Therefore, the ALJ's characterization of the injections is reasonable and supported by substantial evidence.

Plaintiff further argues that the ALJ's finding about her "equivocal straight-leg raise" did not consider other parts of the medical record where she had "tenderness to palpation over bilateral paralumbar muscle groups; tenderness to palpation over bilateral facet columns; decreased lumbar range of motion; and concordant pain with facet loading." *ECF No. 11* at 8. However, Commissioner points out that the ALJ did address many of those medical findings in his decision. *See ECF No. 15* at 5; *see also* AR 32; *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (explaining that "a reviewing court [is] not deprived of [its] faculties for drawing [appropriate] inferences from the ALJ's opinion" and that it is proper for the court to draw inferences from earlier paragraphs in reviewing an ALJ's opinion evaluation). Specifically, the ALJ mentioned plaintiff's tenderness to palpation, pain to her lumbar and cervical spine, decreased lumbar range of motion, alongside mention of the pain she felt in other body parts like her. AR 32. The ALJ then noted that despite these reported symptoms and pain, those

examinations showed that she did "equivocal straight-leg raise in her bilateral lower extremities, and [had] normal strength and sensation in her extremities." AR 32. The medical record reasonably supports the ALJ findings. *See, e.g.*, AR 621. Therefore, the cases that plaintiff cites to state that the ALJ cannot use isolated portions of the record to make his findings (*see* ECF No. 11 at 8) are not applicable as he did not do a cursory analysis or ignore material evidence.

Plaintiff then argues that the ALJ only mentioned a January 14, 2017 MRI when he claimed that MRI results only showed "mild" findings of her lumbar spine. *ECF No. 11* at 7-8. She notes that a June 11, 2020 MRI showed "'[p]rogression of disc degeneration at L5-S1 with a larger left paracentric disc protrusion which contacts and slightly displaces the left S1 nerve root'" and "'[m]ild to moderate left, mild right neuroforaminal stenosis at this level.'" *ECF No. 11* at 7.[2] Plaintiff also claims that the June 2020 MRI indicates that she has Lumbar radiculopathy, which "an inflammation of a nerve root in the lower back, which causes symptoms of pain or irritation in the back and down the legs." *Id.* at 7 n.2. However, the ALJ did consider a December 2020 MRI and found that it "revealed only mild findings as well…." AR 32.

Moreover, the Court does not require ALJs to draft "dissertations" when denying benefits. *Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020). The ALJ correctly pointed out that the January 2017 MRI stated that plaintiff had only "mild" findings for her lumbar spine. AR 35, 621. While plaintiff points out that the January 2017 MRI was conducted three years before her onset date, the results of the June 2020 MRI (or any of the other MRIs) does not merit reversing the ALJs decision here. *See ECF No. 11* at 7; AR 832. The June 2020 MRI shows "progression" of plaintiff's disc degeneration occurred compared to the 1/24/17 MRI, but it is not clear from the record on how significant this progression was or that it progressed to become worse than "mild[.]". AR 832.

---

[2] Plaintiff also references a December 18, 2020 MRI where there was "disc contact with the left S1 nerve" and "[d]is/osteophyte touches the left and may barely touch the right 5th nerves." *ECF No. 11* at 7 n.3; *see also* AR 1298.

8

Additionally, the December 2020 MRI of plaintiff indicated that she still had "mild" degeneration of her lumbar spine, which indicates that the "progression" of disc degeneration as outlined in 6/11/20 MRI was not so severe as plaintiff argues. AR 1298 (noting the mild results in the December 202 MRI to be "no change with June 2020 [MRI]"); *see also* AR 32 (pointing out that the December 2020 MRI showed "mild" lumbar results).

Finally, Dr. Silverman's testimony indicates that her opinion on plaintiff's standing and walking limitations were based on plaintiff's "mild lumbar radiculopathy" and not to her other medical conditions. *See* AR 98 (Dr. Silverman linking her "reasoning limitations" about plaintiff's standing and walking limitations to plaintiff's "mild lumbar radiculopathy[.]"). Furthermore, the ALJ did address plaintiff's other medical conditions in his decision finding her not disabled (*see e.g.*, AR 32-33 (mentioning plaintiff's hip issues and meniscus tear)) but noted that she could still do activities in daily life that undercut the "severity of [plaintiff's medical] allegations." AR 33. Therefore altogether, the ALJ finding Dr. Silverman's medical opinion on plaintiff's standing and walking limitations to be inconsistent to the medical record is reasonable and supported by substantial evidence.

      **ii.** **The ALJ's Finding Regarding Dr. Silverman's Opinion On Plaintiff's Potential Absenteeism At Work Is Supported By Substantial Evidence**

Plaintiff also claims that the ALJ referring to her treatment as "conservative" was erroneous and that the severity of the medical record did support Dr. Silverman's medical opinion regarding her potential absenteeism at work. *ECF No. 11* at 9-10 (citing caselaw that stated that taking lumber and other medical injections is not conservative). Whether plaintiff's treatment is "conservative" does not affect ALJ's reasonable interpretation that the treatment was a reason to discount Dr. Silverman's opinion. As stated above, plaintiff consistently received the lumbar injections from at least 2018 to 2021. AR 1102, 1233. Furthermore, plaintiff cites nothing from the medical record that indicates that she sought any escalation in treatment (*e.g.* surgery) during this time and the Court finds none. *See, e.g.*, AR 1102; *see generally* AR (containing no reference to plaintiff seeking surgery or to escalating treatment

because of her condition).

Furthermore, the ALJ pointed out that plaintiff was still able to do "some household chores… cook… read… take walks,… go to the grocery store to pick up groceries . . . . [and] dress and shower on her own" despite her medical condition. AR 33, *see also* AR 862 (plaintiff reporting what she was able to do in light of her medical condition in February 2022). Plaintiff is entitled to disagree with the ALJ about his findings. However, the Court only has to find that the ALJ's finding was reasonable and supported by substantial evidence. Here, the ALJ finding Dr. Silverman's opinion on plaintiff's potential absenteeism at work to be inconsistent with the medical record is reasonable and supported by substantial evidence.

### iii.    The ALJ Did Not Err In Discounting Parts Of Dr. Silverman's Opinion

Plaintiff's argument that the ALJ erred in discounting parts of Dr. Silverman's opinion because he overrode medical expertise in favor of his "lay medical opinion" also fails. *ECF No. 11* at 10-11 (noting also that courts recognize that ALJs are not medical experts). This argument is also not persuasive. The Ninth Circuit "presum[es] that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled[.]" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). The case that plaintiff cites to support its argument, *Day v. Weinberger*, also stated that an ALJ can reject a doctor's medical opinion if they "expressly state clear and convincing reasons" for doing so. 522 F.2d 1154, 1156 (9th Cir. 1975). For all the reasons stated above regarding the ALJ's analysis of the medical record, the Court finds that he has expressly provided clear and convincing reasons to discount Dr. Silverman's opinion on plaintiff's standing and walking limitations and potential absenteeism from work. *See Day*, 522 F.2d at 1156. Furthermore, relevant regulations require the ALJ to compare medical opinions to the record. *See* 20 C.F.R. § 404.1520c(a) (2025). Therefore, the ALJ did not err in discounting parts of Dr. Silverman's opinion.

IV.     CONCLUSION

In sum, the Court finds that: (1) the ALJ's finding regarding Dr. Silverman's opinion on plaintiff's walking and standing limitations is supported by substantial evidence; (2) the ALJ's finding regarding Dr. Silverman's opinion on plaintiff's potential absenteeism at work is supported by substantial evidence; and (3) the ALJ did not err in discounting parts of Dr. Silverman's medical opinion.

ACCORDINGLY,

**IT IS ORDERED that:**

1. Plaintiff's requested relief in her Brief (ECF No. 11) **DENIED**.
2. Commissioner's Brief (ECF No. 15) requesting to affirm is **GRANTED**.
3. The Clerk of Court is directed to enter final judgment **AFFIRMING** the decision of the Administrative Law Judge.
4. The Clerk of Court is kindly directed to **CLOSE** this case.

DATED: December 17, 2025.

IT IS SO ORDERED.

_____
Hon. Maximiliano D. Couvillier, III
United States Magistrate Judge